UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **BROOKE K. WHITMAN, Individually and** | ) | |
| **as Mother and Next Friend of SAMANTHA** | ) | |
| **KATE WHITMAN, a minor, and JOEL** | ) | **Civil Action No.** |
| **WHITMAN, Individually** | ) | **03-CV-12543RGS** |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **AUTOMATIC DATA PROCESSING, INC.,** | ) | |
| **CHANNEL ONE COMMUNICATIONS** | ) | |
| **CORPORATION, d/b/a CHANNEL ONE** | ) | |
| **NETWORK, and PRIMEDIA, INC.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

**OPPOSITION OF PLAINTIFF TO REQUEST OF DEFENDANT, CHANNEL ONE
COMMUNICATIONS CORPORATIONS, THAT THE COURT RECONSIDER
ITS ALLOWANCE OF PLAINTIFF'S MOTION TO FILE THIRD AMENDED
COMPLAINT**

Now comes the Plaintiff and states her Opposition to the Request of the Defendant,

Channel One Communications Corporation, that the Court reconsider its allowance of the

Plaintiff's Filing of a Third Amended Complaint, for the following reasons:

1) Defendant argues that Plaintiff herself "…did not divulge her alleged post-partum

depression until after no expert could be found to support her theory of stress-induced pre-

eclampsia." However, this argument represents a gross misreading and/or misunderstanding of

what was stated in the Plaintiff's Motion and in the Affidavit of Attorney Anderson [hereinafter

the "Affidavit"], for several reasons. First, Plaintiff did not "divulge" her post partum

depression at all. As was stated in the Affidavit, it was revealed to Plaintiff's counsel by the

Plaintiff's sister, in a conversation she had with her father, Attorney Anderson. Second,

assuming *arguendo* that Plaintiff failed to "divulge" her post-partum depression earlier than when it was divulged, as Defendant argues, her failure was not due to some nefarious strategy on her part to play a game with the Court or with counsel.

Plaintiff does not know anything about the Federal Rules of Civil Procedure, or <u>Daubert</u>. After the birth of her daughter, Samantha, Plaintiff kept her post-partum depression hidden from her father, as did other members of her family, because of her love for him and her concern that he not worry about her, something which is stated explicitly in the Affidavit.

There was never any plan on Plaintiff's part, or anyone's, to keep the information about post partum depression hidden, or to suddenly spring it on unsuspecting lawyers and/or the Court, only if, as and when, another theory of damages (pre eclampsia) failed to materialize or was dropped. In this regard, the Plaintiff never even had any idea that her post partum depression might be connected to the stress she suffered during her pregnancy as a result of the collection efforts of the Internal Revenue Service (IRS). It was her lawyers who realized this connection, as soon as they learned of the existence of that post partum depression (after a conversation with a physician who commented on the medical literature that supported the connection, followed by a casual conversation between Attorney Anderson and Plaintiff's sister about what the doctor said), and they immediately made known its existence (in the form of the Third Amended Complaint) and identified experts who would testify concerning it.

2) Another ground for the Defendant's Motion is that "[t]he statute of limitations had run before Brooke Whitman disclosed her putative post-partum depression…" However (to the extent Plaintiff understands this argument), it is disingenuous. The statute of limitations in this case was the deadline for filing suit alleging negligence against the Defendants for causing Plaintiff's income to be reported twice to the tax authorities. That was a three (3) year statute, as

Plaintiff's counsel understood it, and it was about to expire only a day or two after the Complaint was filed. However, the kind of damages the Plaintiff suffered due to the Defendants' negligence (as opposed to the negligence itself), does not change the statute of limitations. There is only one statute, and it does not matter what kind of harm the Plaintiff suffered, or alleged in the Complaint. Indeed, as stated above, it is not the kind of harm that triggers the statute, but the wrongdoing that caused any kind of harm.

The Plaintiff was not required to know the full extent of her damages before filing suit. "Notice" pleading has been a part of Federal Court practice and procedure for years. Nothing prohibits a party from amending a Complaint, upon learning of additional consequences of the negligence that was alleged, right up through the trial itself. In fact, nothing would prevent the Plaintiff from seeking to amend the Complaint to allege additional acts of negligence, based on discovery or evidence adduced.

3) Defendant also argues that the articles cited in the Affidavit were "obscure," "laughable," and like "two lone wolves crying in the wilderness." Essentially, Defendant argues that under Rule 11(b), as a matter of law, they should be declared insufficient to allow Plaintiff to have alleged pre-eclampsia as an element of damages in the Complaint.

However, the Defendant is dead wrong on this. Subparagraph (3) of Rule 11(b) states that the factual allegations in pleadings must have "evidentiary support...." A common-sense reading of this language is that there must be some evidence - some support somewhere, whether orally or in writing - for the allegation. That requirement was amply satisfied in this case, notwithstanding Defendant's attempts to say otherwise or to denigrate the writings.

First, the number of articles is not the issue, nor should it be. There is no "magic number" of published articles that must exist in the medical literature that would automatically guarantee compliance with Rule 11(b). Conversely, there is no magic number of articles that

automatically guarantees lack of such compliance. As is often said about expert testimony at trial, it is the quality of it, not the quantity of it that is important.

Second, on the issue of quality, the article by the physicians in Helsinki was published in a reputable journal, <u>Obstetrics and Gynecology</u>, which is THE premier journal of the American College of Obstetrics and Gynecology, and the conclusion of the doctor/authors was quite specific: "Depression and anxiety in early pregnancy are associated with risk for subsequent preeclampsia..." The article published in Brazil also had a very specific finding: "Epidemiologic studies show that relative risk for preeclampsia is increased in many stressful situations." Attached hereto are copies of the bibliographies in the Helsinki and Brazilian articles, along with a list of where the articles have been cited as authority in other publications. (Ex. 1 is the Helsinki article; Ex. 2 is the Brazilian article). Are all these publications "laughable?"

Third, as the Affidavit made very clear (or so it was thought), Attorney Anderson also consulted with several obtetricians *prior* to forwarding the articles and other information to Attorney Fine to file suit. Several of these doctors stated they believed there was an association between stress and hypertension during pregnancy, and one of them, a nationally recognized expert in the field of pre-eclampsia, spoke well of the research team in Brazil. In this regard, Defendant's cavalier dismissal of that research team, because it was composed of non-MD's, is both uninformed and prejudicial. In fact, it is exactly the kind of thinking that Plaintiff's counsel were concerned about when they decided to abandon their pre-eclampsia allegation.

Fourth, Defendant's contention that "...he (Anderson) could not find an expert to testify that stress causes pre-eclampsia because none exists" is incorrect. As set forth in his Affidavit, Attorney Anderson was told more than once that there was probably an association between stress during pregnancy and pre-eclampsia, or that stress probably exacerbated a pre-eclampsic condition, pregnancy related hypertension. The problem, as Anderson came to realize as he

spoke with the doctors, was a reluctance to say what they felt without a preexisting quantity of statistically documented studies in place. In the future perhaps, he was told, but not at this time.

4) Defendant argues that the statute of limitations is no excuse for not complying with Rule 11(b), i.e., that by putting one's name on a pleading, a lawyer is bound to conform with that rule, regardless of when the case is filed. Plaintiff agrees completely with this statement. However, by noting the existence of the statute of limitations deadline, Attorney Fine did not mean to imply that he was automatically excused from complying with the requirements of the rules. He was only endeavoring to explain to the Court all of the circumstances that existed when he filed the Complaint, since Rule 11(b) says that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable **under the circumstances**...the allegations and other factual contentions have evidentiary support."(Emphasis added).

Since the words in bold must mean something, and since Attorney Fine had been sanctioned by the Court, *sua sponte,* i.e., without ever having been given the opportunity to explain his actions to the Court, he was only attempting to provide the Court with all "the circumstances" under which he filed suit, including that he had received the case from Attorney Anderson about two days before, and that he was advised that there was authority in the medical literature for an association between stress and preeclampsia. In those circumstances, he drafted the Complaint immediately and filed it before the stature of limitations ran.

Later, when Plaintiff's counsel (both of them) realized the difficulties in proving at trial what some doctors were telling Attorney Anderson in private, they forthrightly abandoned the allegation as to preeclampsia that they originally thought was true based on the initial research. There was never any attempt to mislead the Court or to plead irresponsibly.

5) Finally, regarding the statement, "Most counsel for plaintiffs have their medical experts in line before filing suit," one wonders how many cases Defendant's attorney has filed

representing a plaintiff that would make her expert in this subject. The fact is that Attorneys

Fine and Anderson have, for years, mostly represented plaintiffs in personal injury litigation, and

for them, most of the time they do not "have their medical experts in line before filing suit." In

the real world of plaintiff litigation, not the supposed world of counsel for Defendant, things are

not as orderly as one might at first imagine.


**Conclusion**

Based on the foregoing, Plaintiff requests this Court to deny Defendant's Request that it

reconsider the allowance of the Third Amended Complaint. Plaintiff also moves that the Court

allow her Motion for Reconsideration regarding the Court's issuance of sanctions against

counsel.


                                            The Plaintiff,
                                            By Her Attorneys,


Dated: November 2, 2004
                                            _____
                                            Norman J. Fine, Esq. (BBO #165280)
                                            Robert Anderson, Esq. (BBO #018520)
                                            NORMAN J. FINE, P.C.
                                            200 State Street - 3 North
                                            Boston, MA 02109
                                            (617) 345-0000


### CERTIFICATE OF SERVICE

I, Norman J. Fine, do hereby certify that on this day I served a copy of the foregoing by
first class mail, postage prepaid, on all counsel of record.


Dated: November 2, 2004
                                            _____
                                            Norman J. Fine